# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GEOFFREY FLEMING, JR.; RENEE FLEMING, | |
| Plaintiffs, | |
| v. | Civil No.: 18-1511 (DRD) |
| ROBINSON AVIATION (RVA), INC.; Ci2 AVIATION, INC.; INSURANCE COMPANIES X, Y AND Z, | |
| Defendants. | |
| XIOMARA NOEL, a/k/a XIOMARA GEORGE WILLIAMS, personally, and as legal guardian of her minor son O.L.N; KELORN A. SAMUEL, | |
| Plaintiffs, | |
| v. | Civil No.: 18-1579 (DRD) |
| ROBINSON AVIATION (RVA), INC.; Ci2 AVIATION, INC.; INSURANCE COMPANIES X, Y AND Z, | |
| Defendants. | |

## OPINION AND ORDER

Pending before the Court is Robinson Aviation, Inc.'s (hereinafter, "RVA" or "Codefendant") *Motion for Summary Judgment*. *See* Docket No. 185. Plaintiffs dully opposed RVA's request, Codefendant filed a corresponding *Reply* and, finally, Plaintiffs submitted their *Sur Reply*. *See* Docket Nos. 159, 178, 188 and 207. After carefully examining the Parties' contentions, pursuant to the analysis elucidated below, the Court hereby **GRANTS** the *Motion for Summary Judgment* as to RVA.

# I.   UNCONTESTED MATERIAL FACTS[1]

1) On April 23, 2015, the Federal Aviation Administration ("FAA") entered into a contract with RVA for the operation of several air traffic control tower -including the Fernando Luis Rivas Dominicci Airport's air traffic control tower ("ATC Tower")-[2] under the Federal Contract Tower Program (hereinafter, "*FAA/RVA Contract*"). *See* Docket No. 159-2, Plaintiffs' Exhibit 1 (hereinafter, "**Px**"); *see*, *also*, Docket No. 207-1 at 1 (admitted by RVA).

2) The primary purpose of the air traffic control system is to prevent a collision between aircraft operating in the system and to provide a safe, orderly and expeditious flow of traffic, and to provide support for National Security and Homeland Defense. *See* Docket No. 1597-7, **Px6** at 2-1-1.

3) The *FAA/RVA Contract* allows for subcontracts; to that end, Clause H.15 of the *FAA/RVA Contract* states the following:

> Before employment of any subcontractor/consultant under this contract, the Contractor [RVA] must obtain the written approval of the Contracting Officer [FAA]. The notification for consent to subcontract must be submitted, in writing. 60 days in advance, to the Contracting Officer. In requesting such approvals, the Contractor must furnish all pertinent information required by the Contracting Officer, which may include, but not limited to, the name or names of individuals or companies under consideration, extent of the proposed employment, the unexecuted subcontract document, any potential conflict of interest and the rate of reimbursement. Consent to subcontract any portion of the contract must not relieve the contractor of any responsibility under the contract.

> The Contracting Officer has sole responsibility for approving subcontracts and consultant agreements. If consent is given to subcontract, the contractor must obtain the Contracting Officer's written approval before making any substitution of subcontractors or consultants. Docket No. 159-2, **Px1** at 30.

4) On June 24, 2015, RVA entered into an agreement with CI2 Aviation, Inc. ("CI2") for the operation of the airport traffic control towers of the FAA's Contract Tower Program -including the Isla Grande Airport's ATC Tower- with an effective date of performance through December 30, 2020 (hereinafter, "*RVA/CI2 Contract*"). *See* Docket No. 185-4, Defendants Exhibit C (hereinafter, "**Dx**") at 1-2 and 50.

---

[1] As will be discussed in greater detail below, the Court finds that it is unnecessary to address RVA's negligence arguments under Articles 1802 and 1803 of Puerto Rico's Civil Code. For that reasons, in this *Opinion and Order*, the Court will not address any of the uncontested facts proposed by the Parties that deal with these matters.

[2] The Fernando Luis Rivas Dominicci Airport is also known as the Isla Grande Airport.

5) As per the *FAA/RVA Contract*, the *RVA/CI2 Contract* is an allowed subcontract. *See* Docket No. 159-2, **Px1** at 30; *see*, *also*, Docket No. 207-1 at 1 (admitted by RVA).

6) On October 2, 2017, a Cessna 182DN9021X (hereinafter, "the Cessna") was substantially damaged when it impacted terrain during landing at the Isla Grande Airport. *See* Docket No. 159-1 at 2 (admitted by Plaintiffs).

7) On duty at the ATC Tower on October 2, 2017 was air traffic manager Mr. Demond Phelps (hereinafter, "Controller Phelps"), performing local control. *See* Docket No. 185-6, **DxE** at 6, lines 2-4; 9, lines 4-9; and 11, lines 5-10; *see*, *also*, Docket No. 159-1 at 3 (admitted by Plaintiffs).

8) Controller Phelps was responsible -among other things- for communications with aircrafts incoming and outgoing at Isla Grande Airport regarding departures, landings, and air traffic separation. *Id*. at 11, lines 3-7.

9) Also, on duty at the ATC Tower on October 2, 2017 was Carlos Barreto (hereinafter, "Controller Barreto"), performing ground control. *See* Docket No. 185-7, **DxF** at 7, lines 2-4; 37, lines 13-16; and 102, lines 3-9; *see*, *also*, Docket No. 159-1 at 3 (admitted by Plaintiffs).

10) Controller Barreto, was responsible -among other things- for the taxing of aircrafts and vehicles throughout the airfield on the taxiways. *See* Docket No. 185-6, **DxE** at 11, lines 11-17.

11) Pursuant to the *RVA/CI2 Contract*, CI2 was to provide air traffic control services, including labor, supervision, materials, required equipment, supplies, and services necessary to operate the FAA Contract Towers, including the ATC Tower at the Isla Grande Airport. *See* Docket No. 185-4, **DxC** at 2.

12) CI2 provided all staffing for the FAA Contract Towers, including the Isla Grande Airport's ATC Tower. *Id*.

13) Controller Phelps, air traffic manager and local controller on the day of the incident, and Controller Barreto, ground control on that day of the incident, testified that they were employed by CI2. *See* Docket No. 185-6, **DxE** at 6, lines 2-4; 9, lines 4-9; 11, lines 5-10; Docket No. 185-7, **DxF** at 7, lines 2-4; 37, lines 13-16; 102, lines 3-9; *see*, *also*, Docket No. 159-1 at 3 (admitted by Plaintiffs).

14) Controller Phelps has been employed as a manager for CI2 since October 2011. *See* Docket No. 185-6, **DxE** at 10, lines 19-21. Controller Barreto has been employed by CI2 since October 2008. *See* Docket No. 185-7, **DxF** at 7, lines 9-11.

15) Controller Phelps, as local controller, maintained communication with the Cessna on the day of the incident. *See* Docket No. 185-6, **DxE** at 76, lines 13-17; *see*, *also*, Docket No. 159-1 at 4 (admitted by Plaintiffs).

16) CI2 employees assigned which employee will assume the different roles -or tasks- during their scheduled shifts at the ATC Tower. *See* Docket No. 185-6, **DxE** at 62, lines 9-21.

17) The CI2 employees open the ATC Tower every day; said opening includes calling the San Juan Tower to indicate that Isla Grande's ATC Tower will be opening at a specified time. *See* Docket No. 185-6, **DxE** at 32, lines 14-23.

18) CI2 implemented site-specific services to the ATC Tower, such as the designation of hours of operations -which were subject to the review, processing, and approval of RVA- and whether reporting requirements. *See* Docket No. 185-4, **DxC** at 3-4, ¶¶ 3.1.4-3.1.6.

19) As to accident/incident reporting, the *RVA/CI2 Contract* states that CI2 "must report accidents/incidents and collect applicable data in accordance with FAA Order 8020.16, Air Traffic Organization Aircraft Accident and Incident Notification, Investigation, and Reporting and in accordance with RVA Directives." Docket No. 185-4, **DxC** at 6, ¶ 3.9.

20) On the other hand, as to accident/incident reporting, the *FAA/RVA Contract* states that "[RVA] must report accidents/incidents and collect applicable data in accordance with FAA Order 8020.16, Air Traffic Organization Aircraft Accident and Incident Notification, Investigation, and Reporting." Docket No. 159-2, **Px1** at 7-8, ¶ C.3.9.

21) For the Cessna incident, Controller Phelps prepared an accident package which he maintained under lock and key in his office at the ATC Tower. *See* Docket No. 185-6, **DxE** at 39, lines 1-10.

22) Pursuant to the *RVA/CI2 Contract*, CI2 "must provide training for [CI2]-furnished equipment. CI2 must provide contract personnel with training on Government-furnished equipment (GFE) following initial FAA training". Docket No. 185-4, **DxC** at 5, ¶ 3.7.6.

23) Pursuant to the *RVA/CI2 Contract*, CI2 controlled, monitored and was responsible for operational recorder tapes in the ATC Tower. *See* Docket No. 185-4, **DxC** at 3, ¶ 3.1.5.

24) The *FAA/RVA Contract* states that "[t]he contractor must monitor, change, and be responsible for operational voice recorder tapes, as applicable, and the applications of Digital Voice Recording Systems in accordance with the provisions in FAA Order JO7210.3. At locations where the recorders are not convenient to operating quarters, the contractor must execute an agreement with the Technical Operations manager assigning responsibility for checking and changing recorder tapes." Docket No. 159-2, **Px1** at C-11, ¶ C.5.1.4.

25) CI2 employees were also responsible for initiating any request to technicians for equipment repairs needed in the ATC Tower. *See* Docket No. 185-6, **DxE** at 52-54.

26) The *FAA/RVA Contract* states that "[RVA] must be responsible for initiating service calls to the Contact FAA Facility when experiencing GFE malfunctions. The contractor must provide necessary coordination and assistance to FAA to accomplish routine and corrective GFE maintenance during normal hours of operation. The Contractor must not modify GFE." Docket No. 159-2, **Px1** at 14, ¶ C.5.1.3.

27) CI2 controlled and was responsible for maintenance, janitorial services, facility security, and maintaining an inspection system. *See* Docket No. 185-4, **DxC** at 7-8.

28) CI2 employees receive training material from the FAA that they reviewed and completed in Controller Phelps' office at the ATC Tower. *See* Docket No. 185-6, **DxE** at 18-19.

29) Controller Phelps created a training record of all employees upon completion of each of the trainings, which remained in his custody. *Id*. at 19-20.

30) Pursuant to the *FAA/RVA Contract*, "[RVA] must establish, document, and implement a facility training program for controllers. The training program must be administered in a uniform and standardized manner, reviewed and updated at least annually. The training program is subject to FAA evaluations in accordance with JO 7210.634, Air Traffic Organization (ATO) Quality Control." Docket No. 159-2, **Px1** at C-3, ¶ C.3.7. Furthermore, "[RVA] must maintain a FAA Form 3120-1, Training and Proficiency Record (or a reasonable facsimile), for all operational controllers." *Id*. C-4, ¶ C.3.7.2.

31) Ace Property and Casualty Insurance Company issued policy no. AAP N16740056 001 to CI2 covering the policy period August 24, 2017 to October 1, 2018 with limits of liability for personal injury in the aggregate amount of $15,000,000. Said policy covers CI2's liability arising out of its aviation operations of, *inter alia*, the Isla Grande Airport Tower. See Docket No. 159-1, **Px9** at 2.

## II.    LEGAL STANDARD

### *A.  Motion for Summary Judgment Standard (Fed. R. Civ. P. 56).*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any

material facts;" as well that it is "entitled to judgment as a matter of law." <u>Veda-Rodriguez v.</u>
<u>Puerto Rico</u>, 110 F.3d 174, 179 (1st Cir. 1997). "A dispute is 'genuine' if the evidence about the
fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See*
<u>Johnson v. Univ. of P.R.</u>, 714 F.3d 48, 52 (1st Cir. 2013); <u>Prescott v. Higgins</u>, 538 F.3d 32, 40 (1st
Cir. 2008) (citing <u>Thompson v. Coca–Cola Co.</u>, 522 F.3d 168, 175 (1st Cir. 2008)); <u>Calero–Cerezo</u>
<u>v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not
a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in
a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must
be guided by the substantive evidentiary standards that apply to the case." <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (applying the summary judgment standard while taking into
account a higher burden of proof for cases of defamation against a public figure). In order for a
disputed fact to be considered "material" it must have the potential "to affect the outcome of the
suit under governing law." <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 660–661 (1st Cir. 2000) (*citing*
<u>Liberty Lobby, Inc.</u>, *supra*, at 247–248); <u>Prescott</u>, *supra*, at 40 (1st Cir. 2008) (*citing* <u>Maymí v.</u>
<u>P.R. Ports Auth.</u>, 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof
in order to see whether there is a genuine need for trial." <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306
(1st Cir. 1997) (*citing* the advisory committee note to the 1963 Amendment to Fed. R. Civ. P.
56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-
determinative fact on the record. *See* <u>DeNovellis v. Shalala</u>, *supra*, at 306. Upon a showing by the
moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving
party to demonstrate that a trier of fact could reasonably find in his favor. *Id*. (*citing* <u>Celotex Corp.</u>
<u>v. Catrett</u>, *supra*, at 323). The non-movant may not defeat a "properly focused motion for summary

judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" which affects the granting of a summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); *see, also*, Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., *supra*, at 477.  Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) ("We afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.") (internal citations omitted); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture*."* Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Furthermore, the Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. *See* <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000); <u>Anderson v. Liberty Lobby, Inc.</u>, *supra*, at 255; *see, also,* <u>Pina v. Children's Place</u>, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Reeves</u>, *supra*, at 150 (*quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, *supra*, at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis provided). <u>*See*</u> Fed. R. Civ. P. 56(a). Hence, in order to prevail, Codefendants must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiff, the applicable law compels a judgment in its favor.

### III.   <u>ARGUMENTS</u>

In attention to the above referenced uncontested facts, RVA advances various arguments in support of their request. Codefendant interprets that the claims averred against RVA in the instant proceeding "are largely asserted on the basis of control and an alleged theory that Defendant RVA and/or Defendant CI2 breached a duty of care to PIC Noel and Mr. Fleming." Docket No. 185 at 14. Therefore, first, Codefendant contends that, by virtue of the *RVA/CI2 Contract*, "RVA was not in control of the operations at the ATC Tower at Isla Grande [Airport] nor was it in control of actions performed by the CI2, an independent contractor." Docket No. 185 at 13. To substantiate said assertion, RVA highlights various clauses of the *RVA/CI2 Contract* to show that CI2 was responsible for providing the ATC Tower's: operations, staffing, supervision, training, materials,

supplies, equipment, maintenance, weather, accident and/or incident reporting, janitorial services, facility security, inspection systems and communications with incoming and outgoing aircrafts.[3]

Furthermore, Plaintiffs referenced the depositions of the two CI2 employees that managed the ATC Tower the day of the accident, Controller Phelps and Controller Barreto, in order to highlight that CI2 employees executed the following tasks, pursuant to the *RVA/CI2 Contract*: (1) assignment of daily tasks; (2) daily opening of ATC Tower operations; (3) production of weather, accident and/or incident reports; (4) initiating requests for the equipment repairs; and (5) providing of training materials and recording of training completions.[4] Furthermore, pursuant to the Controllers' depositions, it is evinced that Controller Phelps was responsible for communications with aircrafts incoming and outgoing at ATC Tower of the Isla Grande Airport pertaining to departures, landing and air traffic separation and that Controller Barreto was responsible for the taxing or aircrafts and vehicles throughout the Isla Grande Airport airfield on the taxiways.[5]

Taking the aforesaid into account, RVA contends that, under Puerto Rico law, CI2 must be considered an independent contractor. Furthermore, RVA avers that "vicarious liability has been imposed more restrictively" when an independent contractor is involved in application of Article 1803 of Puerto Rico's Civil Code. *See* Docket No. 185 at 15. To that end, RVA believes that vicarious liability cannot be found against them since "Plaintiffs have failed to present any evidence whatsoever that the harm cause to PIC Noel or Fleming was attributable to risks or dangers posed by the contracted work against which RVA did not take proper precautions". Docket No. 185 at 17.

---

[3] *See* Uncontested Facts Nos. 4, 11, 12, 16, 18, 19, 22, 23, 25, 27-29.
[4] *See* Uncontested Facts Nos. 16-20, 25, 28-29.
[5] *See* Uncontested Facts Nos. 7-10.

In opposition, Plaintiffs assert that the subcontractor clause included in the *FAA/RVA Contract* shows that RVA is the "ultimate party responsible for the operation of the Tower [...] regardless if it decides to operate the Tower with its own employees or whether, as in this instance, it subcontracted a third party (CI2) to operate the Tower." Docket No. 159 at 8. Plaintiffs specifically highlight that the referenced subcontractor clause in the *FAA/RVA Contract* states that: "[c]onsent to subcontract any portion of the contract must not relieve the contractor of any responsibility under the contract."[6] Furthermore, Plaintiffs contend that, under Puerto Rico law, the vicarious liability doctrine is applicable to the instant case since the "operation of an air traffic control tower is inherently a dangerous operation" and, therefore, "CI2's status as an independent contractor (sub-contractor) of RVA does not shield the latter from liability." *Id*. at 9.

On the other hand, Plaintiffs assert that RVA -and CI2- failed to uphold the duty of care towards them when providing instructions and clearances to land an aircraft under the FAA's circulars and regulations, including the *FAA Order JO 7110.65*; consequently, Plaintiffs find that they have managed to establish a "*prima facie*" case under Articles 1802 and 1803 of Puerto Rico's Civil Code. Moreover, Plaintiffs contend that, contrary to RVA's theory, they did not incur in negligence; as to PIC Noel, Plaintiffs find that he reasonable acted within his obligations as a pilot by following the instructions of the ATC Tower, pursuant to 14 C.F.R. § 91.123. As to Mr. Fleming, Plaintiffs highlighted his deposition to evidence that he testified that he was not a pilot nor copilot during the flight, therefore no negligence can be imputed to him. Finally, Plaintiffs stated that even if "PIC Noel incurred in negligence that might have contributed to the accident, under Puerto Rico's comparative negligence and joint tortfeasor rules, all of the defendants, including RVA, would still be liable to the plaintiffs." Docket No. 159 at 20.

---

[6] *See* Uncontested Fact No. 3.

In its *Reply*, as to Plaintiffs' *FAA/CI2 Contract* argument, RVA contends that the subcontractor clause "refers only and exclusively to the FAA. Therefore, the responsibility it refers to is RVA's contractual responsibility towards the FAA." Docket No. 207 at 7. Pursuant to said interpretation, RVA denied that "this applies to the Plaintiffs and/or third parties and/or the present case in any way whatsoever." *Id*. Furthermore, RVA asserts that Plaintiffs did not advance any evidence to establish that RVA had "any responsibility for operating the Isla Grande air traffic control tower at the time of the incident subject to this litigation" nor did they manage to refute the restrictive application of Puerto Rico's vicarious liability doctrine considering CI2's independent contractor status. *Id*. at 6. With regards to the negligence/causation issue, RVA references the U.S. Department of Transportation Federal Aviation Administration Advisory Circular 90-23C for the proposition that "[a] pilot has the ultimate responsibility regarding the avoidance of these precise issue and that, whether or not a warning or information has been given, the pilot is expected to adjust aircraft operation on flightpath as necessary to preclude wake encounters." Docket No. 207 at 3 and 7-8.

As to RVA's contentions in reply, in their *Sur-Reply*, Plaintiffs double-down on their focus of the subcontractor clause of the *FAA/RVA Contract*; that is, Plaintiffs find that "per the clear and unambiguous language of the above cited clause of the contract, RVA cannot extricate itself from the responsibilities imposed in said contract with regard to the operation of the Isla Grande Airport Control Tower." Docket No. 178 at 3. Exclusively hinging on this contractual clause, Plaintiffs reassert that "RVA is vicariously liable for damages arising from the negligent operation of the Tower by CI2 and its employees". *Id*. Finally, Plaintiffs contest RVA's reference to the Advisory Circular 90-23 is misplaced since it does not apply when operating an aircraft under visual flight

rules -as is the case here- and by stating asserting that these types of documents are neither binding nor regulatory. *Id*. at 6.

## IV.   <u>ANALYSIS</u>[7]

### A.   *RVA's responsibilities under the FAA/RVA Contract.*

The Court notes that "[f]ederal law governs the interpretation of contracts entered into pursuant to federal law and to which the government is a party." <u>Smith v. Cent. Ariz. Water Conservation Dist.</u>, 418 F.3d 1028, 1034 (9th Cir. 2005); *see* <u>Mohave Valley Irrigation & Drainage Dist. v. Norton</u>, 244 F.3d 1164, 1165 (9th Cir. 2001). When interpreting the language in said contracts, "we look for guidance 'to general principles for interpreting contracts'". <u>Doe 1 v. AOL LLC</u>, 552 F.3d 1077, 1081 (9th Cir. 2009) (*citing* <u>Klamath Water Users Protective Ass'n v. Patterson</u>, 204 F.3d 1206, 1210 (9th Cir.1999). Under federal law, "'plain language of the contract should be considered first,' with the understanding that the 'common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it'". <u>Simonoff v. Expedia, Inc.</u>, 643 F.3d 1202, 1205 (9th Cir. 2011) (internal citations omitted).

The instant case is based on tort claims under Articles 1802 and 1803 of Puerto Rico's Civil Code. *See* Docket No. 45 at 1. Therefore, to point out the obvious, Plaintiffs are not asserting breach of contract claims against RVA pursuant to the *FAA/RVA Contract*. However, as stated above, Plaintiffs highlight that the *FAA/RVA Contract* authorized RVA to subcontract "any portion of the contract" provided that, by doing so, RVA was not relieved "of any responsibility under the contract." Docket No. 159-2, **Px1** at 30. Pursuant to the referenced language, Plaintiffs believe that

---

[7] As previously stated, the Court will not address RVA's negligence arguments under Articles 1802 and 1803 of Puerto Rico's Civil Code since it finds that the causation arguments involving CI2's status as an independent contractor and the restricted application of the vicarious liability doctrine under Puerto Rico law are sufficient to dispose of the instant *Motion for Summary Judgment.*

Codefendant should remain in the instant case because RVA was not relieved "of any responsibility under the [*FAA/RVA Contract*]" when it subcontracted CI2 to operate the Isla Grande Airport ATC Tower.

Again, as to this argument, RVA contends that the clause in question "refers only and exclusively to the FAA. Therefore, the responsibility it refers to is RVA's contractual responsibility towards the FAA. RVA denies that this applies to the Plaintiffs and/or third parties and/or the present case in any way whatsoever." Docket No. 207 at 7. The Court agrees.

The subcontract clause in the *FAA/RVA Contract* is broad. By its own terms, it allows RVA to subcontract "**any portion**" of the agreement, with the consent of the FAA. *See* Docket No. 159, **Px1** at 30. Although it states that subcontracting any portion of the agreement does not relieve RVA of its responsibilities under the *FAA/RVA Contract*, said subcontracting clause -nor any other clause in the *FAA/RVA Contract*- states that said responsibility is towards third parties. Furthermore, the subcontracting clause does not impose unto RVA the obligation to participate -as a supervisor or otherwise- in the performance of any of the tasks under the *FAA/RVA Contract* that it so chooses -and is allowed by the FAA- to subcontract.

On the other hand, the Court notes that the *RVA/CI2 Contract* includes a hold harmless provision that specifically applies to the relationship between RVA and CI2 for the instant case. To that end, the *RVA/CI2 Contract* states that

> [CI2] must be responsible for and must indemnify and hold both RVA and the Government harmless in connection with any loss or liability from damage to or destruction of property (including Government furnished property) or from injuries to or death of persons (including the agents and employees of both parties) if such damage, destruction, injury or death arises out of, or is caused by performance of work under this contract, unless such damage, destruction, injury or death is caused solely by the active negligence of the Government. The liability of the Government will be determined by application of the Federal Tort Claims Act. The Subcontractor agrees to include this clause, appropriately modified, in all subcontracts to be performed on Government premises in whole or in part. This

clause does not apply to accidents caused by defects or deficiencies in supplies delivered under this contract.

Docket No. 185-4, **DxC** at 27. Taking the aforesaid into account, the Court finds that the language included in the subcontractor clause of the *FAA/RVA Contract*, by itself, is insufficient to bring RVA into the causal nexus of the tort claims asserted in the instant case.

### B.  CI2 as independent contractor and RVA's purported corresponding responsibility.

Article 1802 of Puerto Rico's Civil Code provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." P.R. Laws Ann. tit 31, § 5141.[8] In order to succeed in a tort claim under Article 1802 of Puerto Rico's Civil Code, three elements must be present: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007).

 "'As a general rule, a person is only liable for his own acts or omissions and only by exception is a person liable for the acts or omissions of others.'" Jorge v. Galarza-Soto, 124 F. Supp. 3d 57, 71 (D.P.R. 2015) (*citing* Ocasio v. Hogar Geobel Inc., 693 F.Supp.2d 167, 178 (D.P.R.2008)).  However,  "Article 1803 applies  the  doctrine  of vicarious liability to  actions pursuant to article 1802." Velazquez-Velez v. Molina-Rodriguez, 327 F. Supp. 3d 373, 387 (D.P.R. 2018). To that end, Article 1803 provides, in relevant part, that "[t]he obligation imposed

---

[8] The latest amendments to the Puerto Rico Civil Code were approved on September 23, 2020. Articles 1802 and 1803 are now Articles 1536 and 1540. However, said Articles are inapplicable to the instant case by the operation of Article 1820 which explicitly states that the new Civil Code will be prospectively enforceable 180 days after its approval; that is, March 29, 2021; date after the facts of the case and the filing of the *Complaints* and *Amended Complaints*.

by the preceding section is demandable, not only for personal acts or omissions, **but also for those of the persons for whom they should be responsible**." *Id.,* § 5142 (emphasis provided). However, Article 1803 provides an "exhaustive list of special circumstances in which a party, such as an employer, may be vicariously liable for the torts committed by another party. *See* Jorge v. Galarza-Soto, 124 F. Supp. 3d 57, 71 (D.P.R. 2015).

In the context of vicarious liability, the independent contractor doctrine may be applied. Pursuant to said doctrine, finding that a principal is liable for actions of an independent contractor is considered an exceptional circumstance. *See* Pons v. Engebretson, 160 D.P.R. 347, 356 (2003); *see* Ocasio v. Hogar Geobel Inc., 693 F. Supp. 2d 167, 178 (D.P.R. 2008)("Thus, '[t]he imposition of tort liability for the actions of a third party arises only under certain exceptional circumstances.'") (*citing* CMI Capital Market Investment, LLC v. Municipality of Bayamón, 410 F.Supp.2d 61, 75 (D.P.R. 2006)). Nonetheless, Puerto Rico's Supreme Court has clarified that being classified as an independent contractor, by itself, does not relive the principal for the damages that an independent contractor may cause. *See*, *e.g.*, López v. Gobierno Mun. de Cataño, 131 D.P.R. 694, 704 (1992). To that end, the Supreme Court has identified the circumstances where liability is -or is not- to be imposed on the principal for the damages caused by the independent contractor.

To that end, the Court notes that the principal is not to be held liable for the independent contractor's negligence when it consists in a failure to employ the ordinary and necessary safety measures to perform the work for which he has been retained. Similarly, the principal will not be held liable when the independent contract's negligence was not foreseeable. Finally, the principal is not to be found liable for the independent contractor's negligence when the principal, in due diligence, made sure that the independent contractor had the necessary skills and experience to

perform the work for which he has been retained; which would lead the principal to believe that the independent contractor would employ the necessary safety measures to avoid the risks that could be associated with the task. *See* Pons v. Engebretson, 160 D.P.R. 347, 358 (2003); López v. Gobierno Mun. de Cataño, *supra*. On the contrary, the principal is to be held liable for the independent contractor's negligence when, the work for which he has been retained involves particular risks that are inherent to that type of work. *See* Martínez v. Chase Manhattan Bank, 108 D.P.R. 515, 521–523 (1979); Pons v. Engebretson, *supra*; Lopez v. Delta S. S. Lines Inc., 387 F. Supp. 955, 957 (D.P.R. 1974).

Hence, in order to determine whether a principal would be held liable for damages caused by the independent contractors, first, the Court needs to identify whether the independent contractor status can be applied. To that end, the Supreme Court of Puerto Rico has set forth various factors that should be considered in order to determine the nature of the relationship between the parties; said factors are: "1) nature, extent, and degree of control of the principal; […] 3) ownership of equipment; 4) power to hire and the right to fire; 5) manner of remuneration; 6) opportunity for profit and risk of loss, and 7) tax withholding." Confederacion Hipica De Puerto Rico, Inc. v. Confederacion De Jinetes Puertorriquenos, Inc., 296 F. Supp. 3d 416, 426 (D.P.R. 2017); S.L.G. Hernández–Beltrán vs. TOLIC, 151 D.P.R. 754, 766 (2000); Martínez Pérez v. U.C.B., 143 D.P.R. 554 (1997).[9] This Court has further stated that this determination "does not depend on a specific factor but on the totality of the circumstances present in the relationship

---

[9] The First Circuit has stated that the referenced test provides "'no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'"  Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 7 (1st Cir. 2004)(internal citations omitted)

between the parties. [Therefore, the Court] must examine, then, the factual situation which gave

rise to the controversy, taking into consideration the above mentioned factors." *Id.*

Finally, the Court notes that the referenced factors have been examined in various contexts;

therefore, yielding a variety of results. Nonetheless, in performing said analysis, courts have agreed

that the central factor in the evaluation is the day-to-day supervision and control of the activities

in question. *See*, *e.g.*, Jasper v. Fed. Emergency Mgmt. Agency, 414 F. App'x 649, 651 (5th Cir.

2011) ("Whether the independent-contractor exception bars liability turns on whether the United

States had the right 'to control the detailed physical performance of the contractor' and 'whether

[the contractor's] day-to-day operations are supervised by the Federal government.'" (*citing* Logue

v. United States, 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); United States v.

Orleans, 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)); Alberty-Velez v. Corporacion

de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 7 (1st Cir. 2004); Rios Colon v. United

States, 928 F. Supp. 2d 388, 392 (D.P.R. 2012) ("The essential factor is whether the purportedly-

independent contractor 'exercises day-to-day supervision and control of its own activities.'")

(*citing* United States v. Orleans, 425 U.S. 807, 814–15, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)).[10]

The Court highlights that both Controller Phelps and Controller Barreto were contracted

by CI2 prior to the execution of the *RVA/CI2 Contract*. *See* Uncontested Fact No. 14. Therefore,

prior to -and after- the execution of the *RVA/CI2 Contract*, RVA had nothing to do with the hiring,

supervision and/or training of said employees. Furthermore, pursuant to the *RVA/CI2 Contract*,

CI2 had to provide the ATC Towers with the necessary employees, employee scheduling,

equipment, training, janitorial services, security, inspection systems and maintenance. *See* Docket

---

[10] It is worthy to note that the First Circuit has recognized that in cases where there are no issues of material facts concerning an employment status "a court may decide the employee/independent contractor question as a matter of law if the factors point so favorably in one direction that a fact finder could not reasonably reach the opposite conclusion." Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 7 (1st Cir. 2004).

No. 185-4, **DxC**. Further, CI2 -and their employees- were solely responsible for the ATC Towers' operations and reporting. Pursuant to the aforesaid, the Court finds that RVA held **no control** over CI2's operation of the ATC Tower at the Isla Grande Airport. Moreover, the Court notes that Plaintiff did not provide any evidence to refute said facts nor prove that RVA had any direct oversight role over the referenced operations.[11] Therefore, CI2 is an independent contractor for purposes of this analysis.

As previously explained, extending responsibility to a principal for the acts of an independent contractor is only warranted in exceptional circumstances; specifically, RVA could be found liable for CI2's purported negligence if the work for which CI2 was retained -operation of a ATC Tower- involved particular inherent risks. *See* Martínez v. Chase Manhattan Bank, *supra*; Pons v. Engebretson, *supra*; Lopez v. Delta S. S. Lines Inc., *supra*. Therefore, as to this part of the analysis, the Court must determine if the operation of the ATC Tower at the Isla Grande Airport is a work of the nature that would warrant the application of this exception.

The Supreme Court of Puerto Rico explained that the type of work that this exception refers to are those that may not be done without posing risk or producing damages to third parties or, if this work, by itself, necessarily produces damages. *See*, *e.g.*, Barrientos v. Gob. de la Cap., 97 P.R. Dec. 552, 564 (1969). That is, the damages would not be produced by how the work is performed, but by the performance of the work itself. *See* Bonet v. Municipio de Barceloneta, 87 D.P.R. 81 (1963); Phinney v. United States, 15 F.3d 208, 210–11 (1st Cir. 1994)("The 'inherent danger' determination respecting a particular *activity* turns on whether its proper performance entails undue risk to others")(internal citations omitted). This concept is further clarified by the

---

[11] Moreover, the Court finds that Plaintiffs' reference to the subcontractor clause of the FAA/RVA Contract is also insufficient for purposes of determining that it had any supervisory role or involvement in the ATC Tower's operations.

Restatement (Second) of Torts, which the Supreme Court of Puerto Rico used when developing

its analysis. *See* <u>Martínez v. Chase Manhattan Bank</u>, 108 D.P.R. 515, 509 at note 5 (1979). To that

end,

> [i]t is obvious that an employer of an independent contractor may always anticipate
> that if the contractor is in any way negligent toward third persons, some harm to
> such persons may result. Thus one who hires a trucker to transport his goods must,
> as a reasonable man, always realize that if the truck is driven at an excessive speed,
> or with defective brakes, some collision or other harm to persons on the highway is
> likely to occur. This Section has no reference to such a general anticipation of the
> possibility that the contractor may in some way be negligent. It is not concerned
> with the taking of routine precautions, of a kind which any careful contractor could
> reasonably be expected to take, against all of the ordinary and customary dangers
> which may arise in the course of the contemplated work. Such precautions are the
> responsibility of the contractor; and if the employer has exercised reasonable care
> to employ a contractor who is competent and careful (see § 411), he is not required
> to provide, in the contract or otherwise, that the contractor shall take them.
>
> This Section is concerned with special risks, peculiar to the work to be done, and
> arising out of its character, or out of the place where it is to be done, against which
> a reasonable man would recognize the necessity of taking special precautions. The
> situation is one in which a risk is created which is not a normal, routine matter of
> customary human activity, such as driving an automobile, but is rather a special
> danger to those in the vicinity, arising out of the particular situation created, and
> calling for special precautions. "Peculiar" does not mean that the risk must be one
> which is abnormal to the type of work done, or that it must be an abnormally great
> risk. It has reference only to a special, recognizable danger arising out of the work
> itself.
>
> Restatement (Second) of Torts § 413 (1965).

Taking this backdrop into account, the Court finds that operating the ATC Tower is not the

type of work that would warrant extending responsibility to a principal for the acts of an

independent contractor. Plaintiffs argued -without evidence, caselaw or other persuasive

references- that performing air traffic control involves the possibility of aircraft accidents and

ensuing damages. Although it is obvious that Plaintiffs are correct in their assertion, their

contention is misplaced for purposes of this analysis.

As explained above, the work that would expose the principal to responsibility is the type of work that by being performed -that is, by itself- causes damages. Certainly, the operation of an ATC Tower is performed to avoid damages in airports, not cause them. *See* Docket No. 159-7, Px7 at 2-1-2 ("The primary purpose of the ATC system is to prevent a collision between aircraft operating in the system and to provide a safe, orderly and expeditious flow of traffic […]"). The fact that damages may occur as a result of the negligent performance of the operation of an ATC Tower, as Plaintiffs point out, does not make said work the type that would warrant extending responsibility to RVA in the instant case. *See* Phinney v. United States, *supra* ("The possibility that an employee might perform the work in a negligent fashion does not make the *activity* inherently dangerous").

## V.    CONCLUSION

Given CI2's status as the independent contractor and taking into account that the operation of the ATC Tower at the Isla Grande Airport was not "inherently" or "intrinsically" dangerous, the Court determines that RVA cannot be "charged", through the application of Article 1803 of Puerto Rico's Civil Code, with the purported negligence alleged in the instant case. Furthermore, the Court notes that Plaintiffs did not provide any evidence -other than their reference to the subcontractor clause of the *FAA/RVA Contract*- that would tie RVA directly to the casual nexus of the alleged negligent acts and resulting damages that are claimed in the instant case. Consequently, the Court **GRANTS** RVA's *Motion for Summary Judgement* and hereby dismissed the claims against RVA alleged in all the *Complaints* and *Amended Complaints* pertaining to the instant case.

Finally, the Court notes that it will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See* Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996)("piecemeal appellate review invites mischief.

Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990)("This final judgment rule [. . .] furthers 'the strong congressional policy against piecemeal review.'" *Id.* (quoting In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)); *see also* United States v. Nixon, 418 U.S. 683, 690 (1974).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, June 8, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge